**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

UNITED STATES OF AMERICA,

     Plaintiff,

     v.

TURBO SOLUTIONS INC., f/k/a Alex Miller
Financial Services Inc., d/b/a Alex Miller Credit
Repair, and

ALEXANDER V. MILLER, in his individual
and corporate capacity,

     Defendants.

Civil Action No. 4:22-mc-00369

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................iii

STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT ..........................1

STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ..........................1

SUMMARY OF THE ARGUMENT...............................................................3

ARGUMENT........................................................................................4

I.      THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS. ........4

II.     THE GOVERNMENT HAS ADEQUATELY PLEADED ALL COUNTS. ........7

        A.      The Facts Alleged Would Establish FTC Act Violations..........................8

        B.      The Complaint States a CROA Violation ...............................................10

        C.      The Complaint States a TSR Violation...................................................12

III.    VENUE IN THIS DISTRICT IS PROPER..........................................................13

        A.      Venue is Proper Under 28 U.S.C. § 1391(b)(1) ....................................13

        B.      Venue is Proper Under 28 U.S.C. § 1391(b)(2) ....................................16

        C.      Venue is Proper Under 15 U.S.C. § 53(b).............................................16

IV.     DEFENDANTS FAIL TO ESTABLISH THAT ANY ABSENT PARTIES ARE INDISPENSABLE TO THIS ACTION.............................................................17

V.      THE COURT HAS SUBJECT MATTER JURISDICTION.............................18

VI.     NONE OF DEFENDANTS' OTHER ARGUMENTS WARRANT ANY RELIEF ....................................................................................................................19

CONCLUSION...................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*A Contracting Co. v. S. Concrete Servs., Inc.*,
   17 F.3d 106 (5th Cir. 1994) ............................................................. 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................... 7, 10

*Astra Oil Trading NV v. Petrobras America Inc.*,
   2010 WL 3069793 (S.D. Tex. Aug. 4, 2010) ................................... 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................... 7

*Bigham v. Envirocare of Utah, Inc.*,
   123 F. Supp. 2d 1046 (S.D. Tex. 2000) .......................................... 16

*Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*,
   419 F.3d 576 (7th Cir. 2005) ........................................................... 5

*Broadcast Music, Inc. v. MTS Enterprises, Inc.*,
   811 F.2d 278 (5th Cir. 1987) ....................................................... 1, 5

*Busch v. Buchman, Buchman & O'Brien, L. Firm*,
   11 F.3d 1255 (5th Cir. 1994) ........................................................... 5

*Cactus Pipe & Supply Co. v. M/V Montmartre*,
   756 F.2d 1103 (5th Cir. 1985) ........................................................ 6

*Castillo v. Kerry*,
   2016 WL 11189809 (S.D. Tex. Dec. 20, 2016) .............................. 14

*CFPB v. Gordon*,
   819 F.3d 1179 (9th Cir. 2016) ....................................................... 19

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ...................................................................... 15

*Dir., Office of Workers' Compensation Programs, DOL v. Newport News Shipbuilding and Dry Dock Co.*,
   514 U.S. 122 (1995) ...................................................................... 19

*FTC v. Cantkier*,
   767 F. Supp. 2d 147 (D.D.C. 2011) ................................................ 9

*FTC v. CyberSpy Software, LLC,*
  2009 WL 455417 (M.D. Fla. 2009) ................................................................. 19

*FTC. v. Direct-Prom, Inc.,*
  2005 WL 1313846 (W.D. Tex. May 26, 2005) .................................................. 17

*FTC. v. GTP Mktg., Inc.,*
  CIV. A. 4-90-123-K, 1990 WL 54788 (N.D. Tex. Mar. 15, 1990) ...................... 17

*FTC v. Hornbeam Special Situations, LLC,*
  2018 WL 6521516 (N.D. Ga. 2018) ................................................................. 19

*FTC. v. Natl. Bus. Consultants, Inc.,*
  781 F. Supp. 1136 (E.D. La. 1991) ................................................................. 17

*SEC v. Rogers,*
  283 Fed. Appx. 242 (5th Cir. 2008) ................................................................ 19

*Gen. Contracting & Trading Co., LLC v. Interpole, Inc.,*
  940 F.2d 20 (1st Cir. 1991) ............................................................................. 6

*Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte,*
  536 F.3d 439 (5th Cir. 2008) ......................................................................... 13

*Grammenos v. Lemos*
  457 F.2d 1067 (2d Cir. 1972) .......................................................................... 6

*Hertz Corp. v. Friend,*
  559 U.S. 77 (2010) ......................................................................................... 15

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ....................................................................................... 19

*Mitchell v. Hobbs*
  951 F.2d 417 (1st Cir. 1991) ........................................................................... 6

*Monkton Ins. Servs. v. Ritter,*
  768 F.3d 429 (5th Cir. 2014) ......................................................................... 15

*Stokes v. Gann,*
  498 F.3d 483 (5th Cir. 2007).......................................................................... 1, 8

*Trustees of Central Laborers' Welfare Fund v. Lowery,*
  924 F.2d 731 (7th Cir. 1991) .......................................................................... 6

iv

*United States v. Com. Recovery Sys., Inc.*,
  4:15-CV-36, 2016 WL 9244671 (E.D. Tex. Apr. 18, 2016) .................................................. 17

*United States v. Gas Pipe, Inc.*,
  997 F.3d 231 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 484 (2021) ...................................... 10

*Umphress v. Hall*,
  479 F.Supp.3d 344 (N.D. Tex. Aug. 14, 2020) ................................................................. 16

*Wilson v. City of Mission, Tex.*,
  No. 7:18-CV-00399, 2020 WL 2079359 (S.D. Tex. Apr. 29, 2020) ........................................ 5

## Statutes

15 U.S.C. § 45(a) ............................................................................................................. 19
15 U.S.C. § 53(b) ...................................................................................................... 13, 17
15 U.S.C. § 56(a)(1) ........................................................................................................ 19
15 U.S.C. § 1679a(3) ....................................................................................................... 11
15 U.S.C. § 1679h(b) ...................................................................................................... 19
15 U.S.C. § 6105(a)-(b) ................................................................................................... 19
28 U.S.C. § 1391 ...................................................................................................... passim
Wyo. Stat. Ann. § 17-16-1405............................................................................................ 1, 7

## Rules

Fed. R. Civ. P. 4............................................................................................................ 1, 6
Fed. R. Civ. P. 12.................................................................................................... passim
Fed. R. Civ. P. 19............................................................................................................. 1
Wyo. R. Civ. P. 4 (h)(2)(A) ................................................................................................. 6

## Treatise

6 C.J.S. Appearances § 18 at 22 (1975) ................................................................................. 6

## Regulations

16 C.F.R. § 310.2(dd)...................................................................................................... 12
16 C.F.R. § 310.2(ff)....................................................................................................... 13
16 C.F.R. § 310.2(gg)...................................................................................................... 12

## STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT

1.      Whether Defendants waived the defense of insufficient service by voluntarily agreeing to permanent and preliminary injunctions on the record in open court, or, alternatively, whether the government properly served Defendant Turbo Solutions, Inc. ("Turbo Solutions") through its registered agent in Wyoming and has demonstrated good cause for an extension of time to serve Defendant Miller, who has refused to waive service and has abandoned the address he provided to the Court. *See Broadcast Music, Inc. v. MTS Enterprises, Inc.,* 811 F.2d 278, 281 (5th Cir. 1987); Fed. R. Civ. P. 4(m); Wyo. Stat. Ann. § 17-16-1405.

2.      Whether the numerous factual allegations in the complaint are sufficient to state plausible claims for relief. Fed. R. Civ. P. 12(b)(6).

3.      Whether venue is proper in this district, where Defendants reside and conduct their unlawful credit repair business. *See* 28 U.S.C. § 1391.

4.      Whether Defendants have established that any absent party is indispensable. *See* Fed. R. Civ. P. 19.

5.      Whether to have standing to enforce federal law, the government must identify individual consumers who suffered injury. *See SEC v. Rogers,* 283 Fed. Appx. 242, 243 (5th Cir. 2008).

6.      Whether Defendants' request for dismissal under Rule 41 and Local Rule 11.4, due to the government's alleged failure to serve certain documents filed on the docket before Defendants appeared in the case, should be denied because Defendants do not and cannot allege any prejudice.

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

The United States filed a complaint and an *ex parte* motion for a temporary restraining order and the appointment of a receiver ("TRO Motion") under seal on March 1, 2022. ECF Nos.

2, 3. On March 4, the Court entered a temporary restraining order ("TRO") requiring the government to serve the docket entries on Defendants and setting a hearing for March 18. ECF No. 9. The government served the TRO and related docket entries, including two copies of the complaint, on Defendants on March 7. ECF No. 10; Appx1-2 (Ex. A, affidavits of service).

At the March 18 hearing, in the interest of moving the case promptly toward a resolution, the parties consented to a permanent injunction, which ordered Defendants to cease operating their unlawful credit repair business. ECF No. 14. The Court also issued, at the request of the government and with Defendants' consent, a preliminary injunction, which ordered Defendants to preserve documents and to refrain from making large expenditures outside the ordinary course of business. ECF No. 15. At the Court's instruction, Mr. Miller gave the Court his contact information: an address, phone number, and email address (Alex@AlexMillerCreditRepair.com). Appx7-8 (Ex. B, Hearing Tr. at 29:20–30:22). On the record, Mr. Miller also consented to Fed. R. Civ. P. 5 service via email. Appx8-9 (Ex. B, Hearing Tr. at 30:25, 31:8-15).

Defendants' refusal to accept or waive service has caused the government to expend substantial time and resources to serve process. As detailed in the government's Motion for an Extension of Time to Serve Summons and Complaint and for Leave to Serve Summons and Complaint by Email, *see* ECF No. 26, the government has requested that Defendants waive service—including by emailing and mailing Mr. Miller and his counsel waiver of service forms in accordance with Rule 4(d) several times. *See* ECF No. 26, at 9-10; Appx11-12, Appx18-19 (Ex's C, D, F, G). Defendants refused to waive service. The government has retained a professional process server who has repeatedly attempted to serve Defendants at the address provided to the Court to no avail. Appx20-21 (Ex. H). The government eventually resorted to serving Defendant Turbo Solutions through its registered agent in Wyoming on May 25, *see* ECF No. 25, but Mr.

2

Miller continues to evade service. On May 31, Mr. Miller posted to Instagram that his credit repair operation is "back open for new business," provided a contact number for "New Client Sales," and referred to this lawsuit as "frivolous." *See* Appx22-26 (Ex. I, Humbert Declaration of June 3, 2022, and attachments).

## SUMMARY OF THE ARGUMENT

Through their motion to dismiss—or in the alternative to strike every document filed by the government to date—Defendants reveal a desire to waste the Court's and the government's time by beginning this case anew. *See* ECF No. 22 ("Memo."). None of Defendants' arguments warrant relief. First, Defendants challenge the Court's personal jurisdiction by alleging failure of service, but this argument is meritless. Even if Defendants had not waived service by consenting to this Court's jurisdiction at the hearing, the motion should be denied as baseless as to Turbo Solutions—which has been served—and as premature as to Mr. Miller, whose evasive conduct justifies the government's motion for additional time to serve him. Second, Defendants wrongly contend that the United States failed to state plausible claims under the FTC Act, TSR, and CROA. Defendants' arguments misapply the standard of review and ignore the complaint's robust factual allegations, which far exceed the threshold for stating viable claims. Third, Defendants' venue arguments misconstrue the law and ignore factual allegations establishing not one, but three separate statutory bases for venue. Fourth, Defendants claim that this case should be dismissed for failure to join indispensable parties fails to establish that the supposedly indispensable parties are in fact entities distinct from the named Defendants and fails to explain why such parties are indispensable. Fifth, Defendants' contention that the Court lacks subject matter jurisdiction disregards well-established law that the government has standing to enforce the statutes at issue in this case. Finally, Defendants' argument that the Court should dismiss the case due to a perceived deficiency in service of documents that have no bearing on Defendants' substantive or procedural

rights fails because any error was utterly harmless—Defendants do not even allege prejudice. The Court should deny Defendants' motion to dismiss in its entirety.

## ARGUMENT

### I.   THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS.

In two separate sections of their motion to dismiss, Defendants assert that the Court should dismiss the case due to insufficient service of the summons and complaint. *See* Memo. at 14–16, 19–20.[1] Defendants' argument fails because it has been waived or, alternatively, because it is premature with respect to Mr. Miller and because Turbo Solutions has been served.

First, the Court will recall that Mr. Miller personally appeared in court on behalf of Defendants and submitted to the Court's jurisdiction. It is well established that the defenses of lack of personal jurisdiction and insufficient service may be waived by the defendants' conduct. *See Broadcast Music,* 811 F.2d at 281 (conduct may rise to level of voluntary appearance resulting in waiver of defense of insufficiency of service); *see also Mitchell v. Hobbs*, 951 F.2d 417, 422 (1st Cir. 1991) ("even if no motion or responsive pleading had been filed" defendant waived defense of sufficiency of service by submitting to the jurisdiction of the court); *Gen. Contracting*

---

[1] Although Defendants cite Rule 12(b)(2) as a ground for dismissal, they do not assert that they lack minimum contacts or that the maintenance of this suit would "offend traditional notions of fair play and substantial justice," the essential elements of a defense of lack of personal jurisdiction. *Busch v. Buchman, Buchman & O'Brien, L. Firm*, 11 F.3d 1255, 1257 (5th Cir. 1994). Rather, Defendants' argument that the Court lacks personal jurisdiction is based entirely on their assertion of insufficient service. *See* Memo. at 14–16. Accordingly, any defense asserting lack of personal jurisdiction not based on insufficient service of process is waived. *See Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir. 2005) (Easterbrook, J.) ("It is not [the Court's] job to do the legal research that [a defendant] has omitted."); *see also L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 113 (5th Cir. 1994) ("challenge abandoned for being inadequately briefed"); *Wilson v. City of Mission, Tex.*, No. 7:18-CV-00399, 2020 WL 2079359, at *10 (S.D. Tex. Apr. 29, 2020) ("This Court is entitled to have issues clearly defined; arguments asserted without citation to authority or left undeveloped are waived.").

& Trading Co., LLC v. Interpole, Inc., 940 F.2d 20, 22 (1st Cir. 1991) ("A defendant may manifest consent to a court's *in personam* jurisdiction in any number of ways [including] submission implied from conduct."); *Trustees of Central Laborers' Welfare Fund v. Lowery,* 924 F.2d 731, 732–33 (7th Cir. 1991) ("Waiver may be found as a result of a party's conduct as well as by a failure to raise the defense in the defendant's first pleading."). Several courts have held that making a general appearance suffices to effect a waiver by implication "from a defendant's seeking, taking, or agreeing to some step or proceeding in the cause beneficial to himself or detrimental to plaintiff other than one contesting only the jurisdiction or by reason of some act or proceedings recognizing the case as in court." *Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1108 (5th Cir. 1985) (quoting 6 C.J.S. Appearances § 18 at 22 (1975)); *see also Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972) (if a party enters a case and fails to object to jurisdiction, and requests the court to do some affirmative act on its behalf in some substantive way, the party will be held to have waived further objection).

Defendants appeared at the Court's March 18 hearing and did not preserve any challenges to the Court's personal jurisdiction or to any defect in the service of process. More importantly, during the hearing Defendants submitted to and invoked the authority of the Court by agreeing to the entry of both a permanent and a preliminary injunction. *See* ECF Nos. 14–15; Appx10 (Ex. B, Hearing Tr. at 32:3–11). Specifically, the Court, based on the agreement of the parties, found that Defendants have violated multiple statutes and regulations, allowing the parties to focus on determining the appropriate remedies. *See* ECF No. 14, at 2. This was the result sought by Defendants, who repeatedly expressed a desire to put this matter behind them without prolonged adversarial litigation. *See* Appx4-6 (Ex. B, Hearing Tr. at 2:18–24; 6:15–7:9). In other words, Defendants did not merely appear at a hearing to oppose the government's request for preliminary

relief; they actively submitted to the Court's authority to adjudicate the merits and enjoin Defendants' conduct to expedite resolution of the case. *See id.*; ECF Nos. 14–15. Accordingly, Defendants waived their arguments that the Court should dismiss this case pursuant to Rules 12(b)(5) and 12(b)(2).

Second, even if the court declines to find waiver, Defendants' argument is moot as to Defendant Turbo Solutions, which was served through its registered agent on May 25,[2] and is premature as to Mr. Miller, whom the government has moved for more time to serve. As detailed in its motion to extend the deadline for service, the government has diligently and repeatedly attempted to serve Mr. Miller, who has refused to waive service, appears to have abandoned the address that he provided to the Court at the hearing, and refuses to provide an alternative address. *See* ECF No. 26. Under these circumstances, the government is entitled to additional time to serve Mr. Miller. *See id.*; Fed. R. Civ. P. 4(m). Moreover, Turbo Solutions, an administratively dissolved Wyoming corporation, has been served through its registered agent.[3] Wyoming Rule 4(h)(2)(A) states, "Service upon a corporation within the United States shall be made: (A) by delivery of copies to any officer, manager, general agent, or agent for process." Wyo. R. Civ. P. 4 (h)(2)(A). Service on a registered agent of a corporation in Wyoming is effective even if the corporation has been administratively dissolved. *See* Wyo. Stat. Ann. § 17-16-1405(a), (b)(v) (corporation

---

[2] Defendants filed their motion to dismiss alleging insufficient service before the government's time to serve Defendants under Rule 4(m) expired but have not yet withdrawn their motion as to Turbo Solutions.

[3] Rule 4(e) states: "Unless federal law provides otherwise, an individual . . . may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Rule 4(h) states that a corporation may be served in the same manner as an individual under Rule 4(e)(1). Service on the registered agent of Turbo Solutions was made in Wyoming.

continues to exist as a corporation after administrative dissolution and may be named in a civil proceeding); *id*. § 17-16-1405(b) ("[d]issolution of a corporation does not . . . (vii) [t]erminate the authority of the registered agent of the corporation."). Therefore, there is no basis to dismiss this case for insufficiency of service.

## II.      THE GOVERNMENT HAS ADEQUATELY PLEADED ALL COUNTS.

Defendants wrongly contend that the United States failed to state plausible claims that Defendants violated (1) section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Memo. at 21–22; (2) the Credit Repair Organizations Act ("CROA"), 15 U.S.C. §§ 1679-1679l, Memo. at 23–24; and (3) the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310. Memo. at 25–26. Defendants' arguments misapply the standard of review and ignore the avalanche of facts that render Plaintiff's claims plausible and provide notice far beyond that required to survive a Rule 12(b)(6) motion.

Rule 12(b)(6) focuses on the *factual content* pled in the complaint. Thus, "a claim requires a complaint with enough factual matter (taken as true) to suggest" a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The facts must be sufficiently alleged such that the "claim has facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Put another way, a "plaintiff pleads a claim with facial plausibility" when the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable," *id*., nudging the plaintiff's claims "across the line from conceivable to plausible," based on the Court's own "judicial experience and common sense." *See id*. at 679-80. The Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (*per curiam*).

Defendants do not cite any of the 23 detailed factual paragraphs of the complaint that follow the heading "DEFENDANTS' UNLAWFUL BUSINESS ACTIVITIES," Compl. at 7; *id.* ¶¶ 25–47, and those alleged facts far exceed the *Twombly* and *Iqbal* threshold for plausible claims.[4]

## A.  The Facts Alleged Would Establish FTC Act Violations

The complaint alleges facts describing how Defendants claim that they substantially improve consumers' credit scores by removing negative information and adding credit-building products. These facts, if proven, would comprise false or unsubstantiated statements that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Defendants acknowledge that liability under section 5(a) requires a "representation, omission, or practice that is likely to mislead consumers acting reasonably under the circumstances, and the representation, omission, or practice is material." Memo. at 22 (citations omitted). Defendants then contend, without mentioning the facts alleged in the complaint, that the government failed to suggest that Defendants' representations were (1) likely to mislead consumers acting *reasonably*; and (2) *material*. Even a cursory review of the complaint reveals Defendants' faulty reasoning.

First, the government pled sufficient facts to suggest that Defendants' statements could mislead "reasonable" consumers. In a very similar case involving mortgage relief during the 2009 financial crisis, the United States District Court for the District of Columbia rejected the contention that FTC's claim regarding consumer reasonableness lacked specificity. There, the FTC "allege[d] that Defendant maintain[ed] at least two websites, www.homeownerhelp2009.com and

---

[4] In support of its TRO Motion, the government proffered admissible evidence supporting each material fact alleged in the complaint. *See* ECF No. 3 (motion and exhibits). In issuing a permanent injunction, the Court found that the "United States has shown, and Defendants have not contested" that Turbo and Mr. Miller "have engaged in acts or practices that violate" the FTC Act, CROA and TSR. ECF No. 14 at 2. Nevertheless, the government relies solely on the four corners of the complaint in this opposition.

www.helpforhomeowners.org, that have contained misleading representations regarding mortgage relief services; the allegedly misleading statements included '97% Success Rate' and 'Guaranteed Solutions to Lower Your Rate Today!'" *FTC v. Cantkier*, 767 F. Supp. 2d 147, 156–57 (D.D.C. 2011). The court reviewed the defendants' statements, finding that the FTC "has specified who made the misleading statements, what the statements were, and the circumstances in which the statements were made. Consequently, Plaintiff has provided sufficient details." *Id.*

Here, the government alleges that Mr. Miller, personally and through Turbo Solutions, made a host of statements to consumers indicating that he could improve their credit scores. Defendants' website alexmillercreditrepair.com featured an embedded video that claimed: "You're your credit," "700+ credit scores," "Larger loan amounts," and "Higher credit card limits." Compl. ¶ 28.

Defendants' website also displayed the following statements:

- Repair Your Credit Today!! Guaranteed Results in 40 days

- Delete Negative Accounts

- We provide trade lines (Credit Boosters).

- "The 3 Round Burst". . . is now known as the most effective way to get negative accounts deleted off credit reports.

- The 3 Round Burst consist [sic] of 3 master rounds of advanced disputing. Each round is 30-40 days. You will see massive deletion results at the end of each round.

- Will my score go up? Your score will increase according to how many positive accounts you have after we delete the negative accounts.

- Your scores will increase according to how many Positive Accounts you have after the Negative/Inaccurate accounts are deleted. If you don't have any Positive Accounts then we have Credit Building Products that will help to strengthen you credit scores.

- Alex Miller Credit Repair has helped over 10,000 clients repair their credit and purchase the cars, homes and businesses of their dreams!

*Id.*; *see also id.* ¶ 29 (noting among other things the following Instagram feed representations: "Student Loans = Deleted/Collections = Deleted/Charge offs = Deleted/Evictions = Deleted/Bankruptcies = Deleted/Repos = Deleted/Late Payments = Deleted/Hospital Bills = Deleted/Foreclosures = Deleted."). Moreover, Defendants' admission that they had "over 10,000 clients," *id.* ¶ 28, many members of the public were acting reasonably in engaging Defendants' services.

Second, as with reasonableness, the "materiality" of a statement is based on the Court's analysis of the facts alleged based on its "judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "In general, a statement is material if it has a natural tendency to influence, or is capable of influencing, the decision" of a person. *United States v. Gas Pipe, Inc.*, 997 F.3d 231, 236 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 484 (2021). For example, Defendants' representations regarding "700+ credit scores," "Larger loan amounts," "Higher credit card limits," "Guaranteed Results in 40 days," and the ability to "Delete Negative Accounts," *see* Compl. ¶¶ 28–29, to name a few, go to the heart of Defendants' scheme, and it is plausible to find that those promises would have a tendency or capability to influence consumers.

In sum, the facts establishing a section 5(a) violation as alleged in the complaint provide sufficient detail to survive a Rule 12(b)(6) motion to dismiss.

## B.      The Complaint States a CROA Violation

Defendants also misapply the 12(b)(6) standard to the alleged CROA violations, contending that the government "failed to establish that Defendants are each a 'credit repair organization' under CROA." Memo. at 23. "Credit repair organization" means, among other things, "any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied

purpose of—(i) improving any consumer's credit record, credit history, or credit rating." 15 U.S.C. § 1679a(3).

The facts alleged plausibly suggest that Defendants meet the CROA definition. *See id.* ¶ 7 (alleging that "Turbo Solutions has marketed and sold credit repair services to consumers throughout the United States. Turbo Solutions has employees in the United States and has employees or contractors in the Philippines. Turbo Solutions transacts or has transacted business in this District and throughout the United States."); *id.* ¶ 8 ("Defendant Alexander V. Miller is or was an owner, officer, director, or manager of Turbo Solutions. He is an authorized signatory on many of Defendants' bank accounts. At all times relevant to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint"). Indeed, the United States alleges that "Defendants maintained an Internet website, alexmillercreditrepair.com, and continue to operate various social media accounts on which they market and make deceptive claims regarding their credit repair services." Compl. ¶ 25. The complaint then goes on to identify statements contained in Defendants' website and social media feeds promising to improve consumers' credit records, credit histories, or credit ratings. *Id.* ¶¶ 26–30; *see also id.* ¶¶ 31–34 (telemarketing). In addition to alleging that Defendants made offers to provide services, the complaint alleges that Defendants sought payment for those services. *See id.* ¶ 35 (alleging that "Defendants' telephone representatives require consumers to make an upfront payment of up to $1,500, the amount typically quoted by sales representatives and listed on Defendants' Instagram feed.").

In sum, and as with their contentions regarding the FTC Act, Defendants cite none of the complaint's factual allegations in their motion while at the same time alleging that the complaint lacks sufficient factual content.

11

### C.     The Complaint States a TSR Violation

Lastly, and again without acknowledging the complaint's factual content, Defendants raise two arguments that merit summary rejection. First, Defendants maintain that the complaint "does not allege that any alleged misrepresentation by Defendants were [*sic*] material." Memo. at 25. Second, echoing their CROA arguments, Defendants maintain that the complaint does not allege facts that plausibly suggest that Defendants are sellers or telemarketers engaged in telemarketing under the TSR. *Id*. at 26.

First, as established above with respect to the government's FTC Act claims, Defendants' representations regarding "700+ credit scores," "Larger loan amounts," "Higher credit card limits," "Guaranteed Results in 40 days," and the ability to "Delete Negative Accounts," *see* Compl. ¶¶ 28–29, 71–75, go to the heart of Defendants' scheme, and the Court could plausibly find that those promises are material.

Second, the complaint contained an entire section of factual allegations called "Defendants' Deceptive Telemarketing," which plausibly suggests that Defendants are liable under the TSR. Compl. ¶¶ 31–34.

The TSR directs that "telemarketing" "means a plan, program, or campaign which is conducted to induce the purchase of goods . . ., by use of one or more telephones and which involves more than one interstate telephone call." 16 C.F.R. § 310.2(gg). A "[s]eller means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration," *id*. § 310.2(dd), and telemarketer "means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer." *Id*. § 310.2(ff).

The facts alleged in the "Defendants' Deceptive Telemarketing" section of the complaint relate to activity covered by the TSR. For example, the complaint alleges that "Defendants' website and social media accounts invite consumers to call a telephone number for more information on their credit repair services." Compl. ¶ 31. This plausibly alleges "telemarketing" under the TSR, demonstrating that Defendants run a program that induces consumers to purchase credit repair services through telephone calls. The complaint further alleges that "Defendants' telephone representatives have claimed that Defendants can remove negative items from consumers' credit reports," and that "purchasing credit building products, such as store credit cards (that can only be used to purchase goods or services from a particular retailer), will improve consumers' credit scores." *Id*. ¶¶ 32–33. Indeed, the complaint alleges that "Defendants' telephone representatives have even claimed that as a result of Defendants' services, consumers' credit scores will improve by 200 points in 90 days." *Id*. ¶ 34. Accordingly, the complaint's accusations plausibly suggest that defendants are "sellers" or "telemarketers" liable under the TSR.

## III.    VENUE IN THIS DISTRICT IS PROPER.

Defendants' argument that the complaint fails to allege facts sufficient to establish venue in this district also must fail. Notably, the Court already has explicitly found, and Defendants did not contest, that venue in this district is proper under 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(b)(2), and 15 U.S.C. § 53(b). ECF No. 14 at 2 ¶ A; ECF No. 15 at 1 ¶ A. Moreover, the allegations in the complaint and the evidence in the record are more than sufficient to establish venue. *See Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 449 (5th Cir. 2008).

### A.    Venue is Proper Under 28 U.S.C. § 1391(b)(1)

Venue is appropriate under 28 U.S.C. § 1391(b)(1) in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located. Thus,

13

the government only needs to show that one Defendant is a resident of this district, if the other Defendant is a resident of the state. Here, the allegations in the complaint are sufficient to survive a motion to dismiss, and the evidence in the record establishes that both Defendants are residents of this district.

The complaint alleges, "Defendant Alexander Miller resides in this District." Compl. ¶ 8. Defendants ask the court to reject the common-sense conclusion that this statement alleges Mr. Miller's place of residence, first, by characterizing it as "conclusory" and purportedly non-factual. But a party's residence is a factual allegation. *See, e.g.*, *Castillo v. Kerry*, 2016 WL 11189809, *3 (S.D. Tex. Dec. 20, 2016) ("Plaintiff's residence is a factual allegation"). Defendants next contrive a distinction between Mr. Miller's *residence* and place of *domicile*—arguing that the government must specifically plead the latter because an individual resides in the district that the person is domiciled under 28 U.S.C. § 1391(c)(1). The Court should not entertain this Hail-Mary attempt to impose a technicality into the venue statute whereby any complaint that does not use the magic word "domicile" insufficiently pleads venue. The complaint plainly alleges that Mr. Miller resides in this district, and Defendants' arguments otherwise are baseless.

Evidence on the record also shows that Mr. Miller resides in this district. As noted above, Mr. Miller told the Court that his address is in Missouri City, Texas, which is in this district. *See* Appx8 (Ex. B, Hearing Transcript at 30:19–30:22). Defendants' website also explained that the business "was born" after Mr. Miller relocated to Houston, where he used "a second bedroom [as] a home office" for the business. *See* Appx50 (Ex. J, excerpt from ECF No. 3-1, Declaration of Kathleen Nolan, Attach. U).

Defendants' argument that the complaint does not sufficiently allege Turbo Solutions' place of residence is equally meritless. Defendants recognize that the complaint alleges Turbo

Solutions' principal place of business in this district but argue that this is "inapplicable" to its place

of residence and "does not support venue." Memo. at 18. This misreads the law. A corporation

resides where it is subject to personal jurisdiction, *see* 28 U.S.C. § 1391(c)(2), and a corporation

is subject to general personal jurisdiction where it has its principal place of business, *Daimler AG*

*v. Bauman*, 571 U.S. 117, 130, 137 (2014); *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432 (5th

Cir. 2014). Here, the complaint alleges that Turbo Solutions' principal place of business is in this

district, *see* Compl. ¶ 7, which is sufficient to allege that Turbo Solutions resides in this district for

the purpose of establishing venue under 28 U.S.C. § 1391(b)(1).

Moreover, other record evidence establishes that Turbo Solutions' principal place of

business is in this district. A corporation's principal place of business is normally where the

headquarters is located "provided that the headquarters is the actual center of direction, control,

and coordination." *Hertz Corp. v. Friend,* 559 U.S. 77, 93 (2010). As demonstrated by Turbo

Solutions' website and other online sources, Turbo Solutions' headquarters has been located at

440 Louisiana Street, Houston, Texas. *See* Appx40, Appx50 (Ex. J, Nolan Decl. ¶ 51; Nolan Dec.

Att. U); Appx63-70 (Ex K, Excerpt from ECF No. 3-9, Declaration of Jason Humbert, Attach. I &

Attach. J). Defendants' website and social media posts further establish that Mr. Miller directs,

controls, and coordinates the company from Houston. *See Astra Oil Trading NV v. Petrobras*

*America Inc.*, 2010 WL 3069793, *8 (S.D. Tex. Aug. 4, 2010) (corporation's principal place of

business was "where its sole officer and CEO…implements, directs, controls, and coordinates [the

corporation's] business activities"). As discussed above, Defendants' website explains that Mr.

Miller grew the business from his home office in Houston, and that Turbo Solutions continued to

"outgrow[] 5 office locations in Houston." *See* Appx50 (Ex. J, excerpt from Nolan Dec.

Attachment U). These facts establish that Houston is Turbo Solutions' principal place of business, and accordingly that it is a resident in this district.

### B.   Venue is Proper Under 28 U.S.C. § 1391(b)(2)

Defendants similarly fail to flesh out their argument that the government has not established venue under 28 U.S.C. § 1391(b)(2), which allows for venue in a district where a substantial part of the acts occurred. This argument is equally without merit.

To determine venue under § 1391(b)(2), courts examine the defendant's conduct and where that conduct took place. *See Bigham v. Envirocare of Utah, Inc*., 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000). Courts also may consider the location of the effects of the alleged conduct. *See Umphress v. Hall*, 479 F.Supp.3d 344, 352 (N.D. Tex. Aug. 14, 2020). The government does not need to show that this district is the best venue or even that the majority of allegedly wrongful acts occurred in a district to plead venue under 28 U.S.C. § 1391(b)(2). *Bigham v. Envirocare of Utah, Inc*., 123 F. Supp. 2d 1046, 1048-49 (S.D. Tex. 2000).

Nevertheless, the evidence here far surpasses the bar for venue under 28 U.S.C. § 1391(b)(2). As shown above, the complaint alleges and record evidence clearly shows that Defendants operated their fraudulent credit repair business from offices in Houston. *See* Compl. ¶ 7; Appx40, Appx50; (Ex. J, Nolan Decl. ¶ 51; Nolan Decl. Attach. U.); Appx63-70 (Ex. K, Humbert Dec. Attachs. I, J). Evidence indicates that Defendants' illegal conduct also affected Houston residents: Defendants specifically advertised their fraudulent credit repair business to Houston residents via social media by using the hashtag #HoustonCreditRepair and #CreditRepairHouston. *See* Appx46 (Ex. J, Nolan Dec. Attach. J).

### C.   Venue is Proper Under 15 U.S.C. § 53(b)

Defendants maintain that 15 U.S.C. § 53(b) "has nothing to do with venue." Yet courts in the Fifth Circuit consistently recognize that the government may establish venue under 15 U.S.C.

§ 53(b). *See, e.g.*, *United States v. Com. Recovery Sys., Inc.*, 4:15-CV-36, 2016 WL 9244671, *1 (E.D. Tex. Apr. 18, 2016) (venue proper under 15 U.S.C. § 53 (b)); *FTC. v. Direct-Prom, Inc.*, 2005 WL 1313846, *1 (W.D. Tex. May 26, 2005) (same); *FTC. v. Natl. Bus. Consultants, Inc.*, 781 F. Supp. 1136, 1151 (E.D. La. 1991) (same); *FTC. v. GTP Mktg., Inc.*, CIV. A. 4-90-123-K, 1990 WL 54788, *4 (N.D. Tex. Mar. 15, 1990) (same).

The government has established venue under Section 53(b) here. Section 53(b) allows the government to seek injunctive relief under Section 13(b) of the FTC Act where a "corporation resides or transacts business, or wherever venue is proper under section 1391 of Title 28." 15 U.S.C § 53(b). For the reasons above, the complaint alleges and record shows that Turbo Solutions is a resident of and transacts business in this district, and thus venue also lies under Section 53(b).

## IV.   DEFENDANTS FAIL TO ESTABLISH THAT ANY ABSENT PARTIES ARE INDISPENSABLE TO THIS ACTION.

Defendants also argue that this case should be dismissed pursuant to Rule 19 for failure to join indispensable parties. Memo. at 26–30. The allegedly indispensable parties are Alex Miller Credit Repair and Alex Miller Financial Services, Inc. Implicit in Defendants' argument is the assertion that these supposedly indispensable parties legally exist and are distinct from Defendants. However, Defendants do not state as much and, in correspondence with the United States, Defendants seem to concede that they have no evidence that these allegedly indispensable parties are juridical entities distinct from Defendants. *See* Appx74-75 (Ex. L). Moreover, Defendants fail entirely to explain what role these allegedly indispensable and legally distinct parties have in the conduct at issue in this case. Defendants' argument provides no basis for the Court to conclude that any absent party is indispensable.

Defendants are perhaps unaware that the supposedly indispensable parties here—Alex Miller Credit Repair and Alex Miller Financial Services, Inc.—appear in the complaint as

alternative names for Turbo Solutions. According to publicly available documents filed with the Wyoming Secretary of State, Turbo Solutions was formerly named Alex Miller Financial Services, Inc. *See* Appx 76-77 (Ex. M). Therefore, the caption in this case indicates that Turbo Solutions was formerly known as Alex Miller Financial Services, Inc. Additionally, the credit repair business operated by Defendants was held out as Alex Miller Credit Repair, as illustrated, for example, by Defendants' website, alexmillercreditrepair.com, which refers to the business as "Alex Miller Credit Repair." *See, e.g.*, Appx 52 (Ex. J, Nolan Decl. Attach. V). Therefore, the caption indicates Turbo Solutions does or has done business as Alex Miller Credit Repair. To the extent there was ever any mystery as to why these alternative names were listed in the caption, the government hopes the mystery has now been dispelled. If discovery reveals that additional parties should be joined to this case, the government will seek leave to join such parties at the appropriate time.

## V.     THE COURT HAS SUBJECT MATTER JURISDICTION.

Defendants argue that this Court lacks subject matter jurisdiction because the government lacks Article III standing to bring this action. Defendants contend that, to establish standing, the government must "show some injury in fact" and that this requirement has not been met because "[t]he government does not name one citizen or consumer injured by any conduct by Defendants" and thus the government "has no standing to proceed." Memo. at 11.

It is well-established that for the government to bring this civil enforcement action, proof of harm to individual citizens is not required.[5] Congress conferred standing on the FTC by empowering it to enforce the statutes at issue. *FTC v. CyberSpy Software, LLC*, 2009 WL 455417 (M.D. Fla. 2009) (FTC has standing to enforce violations of the FTC Act as a result of

---

[5] In any event, the government did provide consumer declarations alleging harm with its TRO Motion. *See* ECF Nos. 3-2, 3-3, 3-4 and 3-5.

Congressional authorization); *SEC v. Rogers,* 283 Fed. Appx. 242 (5th Cir. 2008) (Congress may confer standing on federal agencies to bring enforcement actions under its statutes); *see also Dir., Office of Workers' Compensation Programs, DOL v. Newport News Shipbuilding and Dry Dock Co.,* 514 U.S. 122, 133 (1995) (describing how Congress can confer standing on federal agencies to enforce statutes without infringing Article III). Congress has authorized the FTC to enforce each of the statutes at issue in this case, and in cases seeking civil penalties, requires the FTC to refer such cases to the Attorney General to enforce on FTC's behalf. *See* 15 U.S.C. §§ 45(a) (FTC authorized to enforce FTC Act); 15 U.S.C. § 1679h(b) (violations of CROA shall be enforced by the FTC under the FTC Act); 15 U.S.C. § 6105(a)-(b) (violations of the TSA shall be enforced by the FTC under the FTC Act); 15 U.S.C. § 56(a)(1). As a result of Congress's statutory authorization to enforce these statutes, the government suffers a constitutional injury when any of these laws is violated and is not required to identify a more "particularized" injury to support standing. *See CFPB v. Gordon*, 819 F.3d 1179, 1188−89 (9th Cir. 2016) (when the executive branch is authorized to enforce a law it does not need to suffer a "particularized injury" to have standing); *FTC v. Hornbeam Special Situations, LLC,* 2018 WL 6521516, at *2 (N.D. Ga. 2018) (same). Indeed, "[v]indicating the *public* interest (including the public interest in Government observance of the Constitution and laws) is the function of Congress and the Chief Executive." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 576 (1992).

## VI.   NONE OF DEFENDANTS' OTHER ARGUMENTS WARRANT ANY RELIEF

Defendants' remaining arguments merit little discussion. Defendants argue that the entire case should be dismissed under Rule 41 and that all documents filed by the government should be stricken pursuant to Local Rule 11.4 because, in Defendants' view, certain documents have not been properly served. Memo. at 30–35. As discussed above, to the extent this argument relates to

service of the summons and complaint, it fails. *See supra* pp. 4-6. To the extent the argument relates to service of other docket entries, docket entries 1 through 4, and 9, which includes the TRO, the Complaint, the government's Motion for a TRO, and all supporting exhibits—all the docket entries necessary to put Defendants on notice of this case, the allegations against them, and the relief requested by the government—were served on Defendants via email, as authorized by the Court, ECF No. 9 at 4 ¶ IV, and via personal service at Mr. Miller's address. ECF No. 10; Appx1-2 (Ex. A). Service was indisputably effective: Defendants appeared at the hearing on March 18. Defendants complain that the government's motions for admission *pro hac vice* and orders granting the same were not served on them either, but do not attempt to explain in what way this failure to be served with documents that have no bearing whatsoever on defendants' procedural or substantive rights prejudiced them, or why the extreme sanction of dismissal is appropriate.[6] Defendants cite no instance of a court imposing such a remedy in this context, for obvious reasons.

## CONCLUSION

For the above reasons, the United States respectfully requests that this Court deny Defendants' motion to dismiss in its entirety.

---

[6] At the time of the TRO (Friday afternoon), this matter remained under seal and government counsel in Washington, D.C., could not access the docket through the ECF system and did not contact the clerk to obtain the documents before the Monday deadline to serve the TRO. The government regrets any inconvenience caused by this oversight which, nevertheless, is not prejudicial and is wholly harmless.

Dated: June 6, 2022

Respectfully submitted,

**FOR FEDERAL TRADE
COMMISSION:**

**FOR PLAINTIFF UNITED STATES OF
AMERICA:**

JAMES REILLY DOLAN
Acting General Counsel

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

MALINI MITHAL
Associate Director
Division of Financial Practices

ARUN G. RAO
Deputy Assistant Attorney General

HEATHER ALLEN
Assistant Director
Division of Financial Practices

GUSTAV W. EYLER
Director
Consumer Protection Branch

GREGORY A. ASHE
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
Telephone: 202-326-3719
Facsimile: 202-326-3768
Email: gashe@ftc.gov

LISA K. HSIAO
Assistant Director

CLAUDE F. SCOTT
Senior Litigation Counsel

STEPHEN C. TOSINI (pro hac vice)
Senior Trial Counsel

AMY P. KAPLAN
Trial Attorney

JENNIFER B. LOWERY
United States Attorney

DANIEL HU
Assistant United States Attorney

By: */s/ Marcus P. Smith*
MARCUS P. SMITH (admitted pro hac vice)
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
(202) 353-9712
marcus.p.smith@usdoj.gov

21

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served upon all defendants by operation of the Court's CM/ECF System, on June 6, 2022.

*/s/ Marcus P. Smith*